The core of our appeal is that defendant Cunningham did not conduct herself as a reasonable government actor. Let me ask you something. As I read the brief, the contention that stood out for me was that there was a denial of due process because she was biased against Lombreros. And my reading of the facts was, well, maybe so, but my reading of the law was, so what? A judge has to be unbiased, but an investigator or a police officer does not have to be unbiased. A police officer may have it in for somebody that he thinks is a criminal for years until he finally gets them. I don't understand the problem. Your Honor, the theory of our case is that Ms. Cunningham set in motion the series of events that resulted in the summary revocation of the license. And by that act, the summary revocation effected immediate injury. Well, let's say she did. What's contrary to the Constitution about that? I mean, if he's guilty of the things that he lost his license for. And, Your Honor, he wasn't. If you falsify the evidence, that would be different, but I didn't see that contention. Your Honor, there was a sequence of decisions at which each one of those in which the government actor, Cunningham, exercised any degree of discretion, that action was taken adverse to Lombreros. So when his license was due for renewal on March 31, 2002, she instructed that it be withheld. That act, it made no difference whatsoever to any pending investigation in terms of Bureau of Labor and Industry's ability to go ahead and investigate and revoke the license or do anything at all. At that point, nothing happened because they said he could continue working. Well, Your Honor, what did happen was it took him off the list of licensed contractors, and that's part of our record. And that is the list that goes to the agencies with whom he sought to obtain contracts. So that was an immediate problem for Mr. Lombreros and his business. Something that I wanted to ask, and I didn't see anything that rebutted it in the record. Maybe you can tell me about it. There was an audit done of his books, and they looked at the people who were fighting the fires and the people who were trained, and they found discrepancies. That people fighting fires, there was no record of them being trained. Is that inaccurate, or did that, for whatever reason, did the books reflect that discrepancy? There were discrepancies in the books, yes. So isn't that enough for her to withhold the license on the grounds that they were using people who weren't trained to fight fires? At least it appeared that they weren't trained to fight fires to fight fires. Well, Your Honor, first, that wasn't the reason why, that wasn't information that she had as of March 20, March 21, when she directed that it not be renewed. The reason why it was directed that it not be renewed was because another contractor, or a third party, said he heard from somebody else that- That Leila supposedly told, was it Coleman? Yes. That Lombreros was using untrained firefighters. Yes, that was the issue. Well, the question really before us is would an objectively reasonable government employee who gets to make these decisions think that they were violating federal constitutional law by withholding a license or suspending a license based upon information that a person was employing untrained firefighters? That's really the question. Not whether they were right or wrong, but whether they knew what they were doing was in violation of the law. And, Your Honor, respectfully, I disagree that that's a question. I think the question is when, as of June 12, when the agency, by its own rules, has a requirement that in an emergency revocation, summary revocation, that the individual be informed and be given the opportunity to respond before it's affected. That is not observed, and the statute also, state law, also requires that specific findings be made of the basis for the emergent action. That was not observed. That is the trigger point of the due process thing. But when the first letter went out, it was pointed out to them that there were some problems under the Oregon law, and they said, keep working, and they did an amended letter within a week. So there was no suspension of their permit or license until the second letter, right? No, sir. I'm sorry. The first letter on June 12, that was immediately effective. And then through counsel. That's the second letter. The June 12 letter was actually the second letter. Your Honor, June 12 was the first letter. The second was June 17. Oh. June 12 was a Wednesday. June 17 was the following Tuesday, I believe. Why can't they delay renewal of a person's license because they've heard he's using unlicensed firefighters until they investigate the allegation to determine whether it is well-founded? Your Honor, they can, but they don't have to. And it doesn't make any difference to their investigation. They can, but they don't have to. The important part of that statement for us is they can. As far as the violation of state regulations, if there was one, that's not a constitutional violation, so it wouldn't give rise to a 1980 complaint. Your Honor, what we sought to set forth for the court was a series of events. The withholding of the license renewal on March 31 was just the beginning. The second event that we think is significant is that on March 8, or May 8, Cunningham told the Small Business Administration Representative Jensen he's going to lose his license. That is, if the determination is made as of May 8, before any investigation is completed, before there is any contention that we have emergency circumstances because of a peak of fire season, or anything like that. That's the first question I ask. What entitles him to an unbiased investigation? Well, Your Honor, he has a property interest in that license. That's undisputed. And when that license is— I don't think I'm getting across to you. You remember the story of Al Capone? The FBI was out to get him for years, and finally they got him on a relatively little tax violation. But they got him fair and square, and it didn't matter that they'd been out to get him on bigger stuff for years. That's because investigators can be biased, and they can be out to get somebody. Your Honor, what I think respectfully is missing in all of this, a man has a business, and he has ongoing commitments, contracts. And in this case, it's clear in the records, undisputed, that he has a contract with Yusef van der Hoff to harvest his strawberries. The agency knows, because this is their business to know, that they're responsible for overseeing the contracting of contracts, which include contractors, which include perishable fruits. And in this— They can't get him fair and square. They can't cheat. They can't lie. They can't create phony evidence. I can't see any allegations they did. Our allegation is they didn't care about the evidence. Cunningham didn't care about the evidence, because she'd made up her mind two or three years earlier that this is a bad guy. And so when they revoked his license, fruit spoiled in the field. He lost—van der Hoff lost his crop. Lembreris lost the benefit of his contract. That's what it's about. The fact of the matter is that, objectively, he had people fighting fires who weren't trained to fight fires. Your Honor, I don't think on this record that conclusion— There was an audit done, and there's nothing in the record that I found that rebuts the audit. Well, there is, Your Honor, part of the record that the Bureau of Labor abandoned— Pardon me? They abandoned this effort to revoke his license, ultimately. But that's lucky for your client, perhaps. But don't the Hammond and McSwain declarations show that there were record discrepancies? I'm talking page 27 of the excerpts is record, and 33 to 34, show that in an audit he had people fighting fires who there was no record of them being trained. And the point, if I can—I'm over time. Go ahead and answer. That was in dispute. And he—the rule before the license was summarily revoked, under the rule he was entitled to an opportunity to meet and explain, and he was denied that. Not if it's an emergency. Even under Oregon law, not if it's an emergency. And so that was the question. There was peak of the fire season. And, Your Honor, that is—the evidence of the peak of the fire system is slim at best. This is early June, mid-June. Well, I've completed my time. Thank you. Good morning. May it please the Court, I'm Richard Wasserman for the Appalachians. It's clear to me from the colloquy that I've just been listening to that this Court has a clear understanding of the facts and the issues in this case. And so rather than give my prepared presentation, I think it would be more appropriate for me to simply invite any questions that the Court may have. The big problem I have, and this is his best argument, and he mentioned it, but I don't think he pushed it, is why didn't they just say, okay, your forest license is suspended? There was nothing about the strawberries. Why didn't they just revoke part of his license? Well, I think that the District Court had a good explanation, which in our brief we've asked this Court to accept, which is that may or may not have been an option for the Bureau under the Bureau's own rules, because the Bureau's own rules talk about revoking a license. It doesn't suggest that there was a way for the Bureau to revoke... But you can grant a forest license or a farming license. You don't have to grant both, right? So if you can grant one and not the other, why can't you revoke one and not the other? He had one license. He had a farm and forest contractor's license, and I think the District Court correctly pointed out that even if they could have done that under state law, there's nothing unconstitutional about not doing that. And at the very least, the decision-makers, there was nothing clearly unconstitutional that would have deprived the decision-makers or these defendants of qualified immunity. And, of course, these named defendants weren't the decision-makers in this case. They weren't the ones who actually made the decision to do an immediate revocation, much less revocation of the entire license rather than one aspect of the license. So even if the Bureau could have done it that way, there was nothing in the federal constitution that compelled them to do it that way. Thank you, Counsel. Thank you, Your Honor.
judges: Kleinfeld, Graber, Moskowitz